HERMAN CLAYTON MIDDLETON v. JAMES WOODROW MYERS AND LOU WILLIAMS, JR.

No. 110

(Filed 8 January 1980)

**Malicious Prosecution § 13.3— no genuine issue as to malice—summary judgment**

In an action for malicious prosecution based upon allegations that defendant planted illegal drugs in plaintiff's truck and thereafter caused the prosecution of plaintiff for unlawful possession of the drugs, summary judgment was properly entered for defendant where malice on the part of defendant was negated by defendant's affidavit that he overheard portions of a conversation in a restaurant among three young people in which they mentioned that plaintiff, a school teacher, was a distributor of drugs and would deliver drugs, and that he acted in good faith and out of a civic duty in telling a police officer that drugs would be found in plaintiff's truck, and where no specific factual controversies as to the maliciousness of defendant's actions were presented by the testimony of plaintiff's witness, the police officer, that defendant first questioned him as to plaintiff's involvement in the drug trade and that defendant refused to tell him how defendant knew that drugs would be in plaintiff's truck but stated only that the drugs would be there if defendant said they were there.

Middleton v. Myers

Justice HUSKINS dissenting.

Justices EXUM and COPELAND join in the dissenting opinion.

Justice EXUM dissenting.

Justice COPELAND joins in the dissenting opinion.

ON plaintiff's petition for discretionary review of an opinion of the Court of Appeals, reported at 41 N.C. App. 543, 255 S.E. 2d 255 (1979), affirming summary judgment for the defendant Williams entered by *Collier, Judge* on 16 June 1978 in the Superior Court, DAVIDSON County.

This is an action for malicious prosecution brought by plaintiff, a school teacher in Davidson County, against the defendant Myers, a Lexington police officer, and the defendant Williams, a pharmacist in Lexington. On March 3, 1975, based on information supplied by defendant Williams, plaintiff was arrested by City of Lexington police officers, one of whom was the defendant Myers. Plaintiff was charged with an offense related to the illegal possession of narcotics. From the record before us we are unable to determine the exact nature of the criminal charges, however illegal drugs were discovered by the officers in a motor vehicle belonging to the plaintiff. In the subsequent criminal proceeding against the plaintiff, the evidence of the controlled substance was suppressed and the charges were thereafter dismissed. Following the dismissal, plaintiff instituted this action alleging the defendants caused the illegal drugs to be placed in plaintiff's vehicle, and thereafter caused the unlawful, illegal and malicious prosecution of the plaintiff.

On defendant Williams' motion, and after considering the affidavit of defendant Williams and testimony from defendant Myers offered by plaintiff, Judge Collier granted summary judgment in favor of the defendant Williams, and the granting of this motion was affirmed by the Court of Appeals (41 N.C. App. 543, 255 S.E. 2d 255 (1979)). Plaintiff's petition for discretionary review of the opinion of the Court of Appeals was allowed September 10, 1979.

*Wilson, Biesecker, Tripp and Wall, by Joe E. Biesecker, for plaintiff appellant.*

*Rosbon D. B. Whedbee for defendant appellee Williams.*

*Ted Royster for defendant appellee Myers.*

BROCK, Justice.

An action in tort for malicious prosecution is based upon a defendant's malice in causing process to issue. In *Barnette v. Woody*, 242 N.C. 424, 88 S.E. 2d 223 (1955), this Court set out the essential elements needed to establish a cause of action for malicious prosecution as follows: (1) malice in the defendant's prosecuting the action, (2) want of probable cause for bringing the action, and (3) termination of the criminal proceedings instigated by the defendant in favor of the plaintiff. *See also, Abernethy v. Burns*, 210 N.C. 636, 188 S.E. 97 (1936); *Carson v. Doggett*, 231 N.C. 629, 58 S.E. 2d 609 (1950); *Taylor v. Hodge*, 229 N.C. 558, 50 S.E. 2d 307 (1948). In the present case we are of the opinion that defendant's affidavit negates malice on his part and the forecast of evidence by plaintiff failed to show any evidence of the essential element of malice on the part of the defendant and thus the granting of summary judgment in favor of the defendant was proper.

In *Zimmerman v. Hogg and Allen*, 286 N.C. 24, 29, 209 S.E. 2d 795, 798 (1974), this Court held that a party moving for summary judgment may prevail on his motion by showing that there is no triable issue of fact before the court. We noted that "[t]his burden may be carried by *movant by proving that an essential element of the opposing party's claim is nonexistent* . . . . (Emphasis added.) If the moving party meets this burden, the party who opposes the motion for summary judgment must either assume the burden of showing that a genuine issue of material fact for trial does exist or provide an excuse for not so doing." *See also, Moore v. Fieldcrest Mills*, 296 N.C. 467, 470, 251 S.E. 2d 419, 421 (1979).

In his affidavit filed with the motion for summary judgment, defendant Williams averred that he overheard a conversation between three young people in which they were discussing the fact that they could obtain drugs from a school teacher named Middleton. Williams states that he then reported the conversation to Officer Myers of the Lexington Police Department Vice Squad. Defendant Williams by his affidavit further swears that, "I feel it is my civic duty to give you (Officer Myers) this information and I hope it will help prevent or stop some of the drug problems in our community. As a druggist, I know the danger of drug misuse

and would hate to see young people (sic) and kid's lives ruined." The affidavit also states that "[a]t no time prior to the day in question did I know Mr. Middleton nor had I ever seen him before that date to my knowledge."

In his motion for summary judgment defendant Williams submitted the above noted affidavit as evidence negating the essential element of malice in plaintiff's case of malicious prosecution. Pursuant to G.S. 1A-1, Rule 56 (Summary Judgment), after defendant submitted this affidavit, plaintiff as the adverse party to the motion for summary judgment could not rest on the allegations of his pleadings. He was required to come forward with his own affidavits or evidence setting forth *specific facts* as to the maliciousness of defendant's prosecution. To withstand the defendant's summary judgment motion, these facts must show the existence of genuine issues for trial. See *Zimmerman v. Hogg and Allen, supra; Pitts v. Pizza, Inc.,* 296 N.C. 81, 85, 249 S.E. 2d 375, 378 (1978); *Page v. Sloan,* 281 N.C. 697, 705, 190 S.E. 2d 189, 193 (1972). In response to defendant Williams' affidavit, plaintiff submitted the testimony of the defendant Myers. Plaintiff contends this testimony presents evidence of defendant Williams' malice toward the plaintiff, creating a factual issue and thereby making summary judgment inappropriate. We disagree.

Plaintiff alleges first that Myers' testimony creates an issue of fact as to the element of malice in that approximately two weeks before the arrest of Middleton at a meeting between Williams and Myers it was Williams who first asked Myers if he (defendant Myers) ever "[got] any information on Mr. Middleton." Secondly, Myers' testimony contains statements concerning the conversation he had with defendant Williams on March 3 just prior to the arrest of the plaintiff. Plaintiff contends defendant Myers' recollection of this conversation creates a question of fact as to whether or not the defendant Williams instigated this prosecution with malice. Concerning this conversation, the testimony of Myers was as follows:

". . . I went by to see Mr. Williams. When I went by to see Mr. Williams, he made certain statements to me concerning Mr. Middleton. *The statements are not at all that plain to me now,* but it was in reference to Mr. Middleton having drugs in his truck; *that was the context of the statements. I can't*

*remember the exact words right now* . . . . I asked him how did he know the drugs would be there, and he responded and said 'If I say they will be there they will be there', *or something to that effect.*" (Emphasis ours.)

Viewing this testimony offered by the plaintiff, the non-moving party, indulgently, and giving him the benefit of every reasonable inference to be drawn therefrom, [*See Page v. Sloan,* 281 N.C. 697, 704, 190 S.E. 2d 189, 193 (1972)], we are of the opinion that plaintiff's evidence presents no specific facts which could be found by the trier of fact to show that the defendant instigated this prosecution with malice. Therefore by his affidavit, defendant Williams has met his burden of showing the lack of any triable issue of fact with regard to his alleged malice in prosecuting this action, and is entitled to judgment as a matter of law.

The counter-testimony offered by plaintiff does not show specific factual controversies as to the maliciousness of defendant's actions which require a trial for the resolution thereof. First, no reasonable inference of malice may be drawn simply from the fact that defendant Myers avers defendant Williams first questioned him as to the plaintiff's involvement in the drug trade. Second, we find that even when viewed in the light most favorable to the plaintiff, the fact that when defendant Williams and defendant Myers discussed plaintiff's involvement in drug trafficking, Williams apparently refused to tell Myers how he knew the drugs would be in plaintiff's truck (although from the equivocal statements in Myers' testimony we cannot be sure just what the defendant Williams told Myers) is not sufficient to establish a factual controversy as to whether or not defendant Williams maliciously caused plaintiff to be prosecuted.

Since defendant Williams' affidavit averred that the prosecution of the plaintiff was instigated in good faith as a civic duty, and the plaintiff failed to present counter-affidavits or other evidence creating factual issues as to the maliciousness of the defendant Williams' action, summary judgment was properly granted for defendant Williams. The opinion of the Court of Appeals is therefore.

Affirmed.

Justice HUSKINS dissenting.

The court is not authorized on a motion for summary judgment to decide issues of fact and credibility. *Moore v. Fieldcrest Mills*, 296 N.C. 467, 251 S.E. 2d 419 (1979); *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976). It is authorized to determine only whether genuine issues of fact or credibility exist. The party moving for summary judgment has the burden of "clearly establishing the lack of any triable issue of fact by the record properly before the Court. His papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded." 6 Moore's Federal Practice § 56.15[8] at 642 (2d ed. 1976). *Accord, Pitts v. Pizza, Inc.*, 296 N.C. 81, 249 S.E. 2d 375 (1978). A motion for summary judgment must be denied if the opposing party submits affidavits or other supporting materials which materially contradict the factual showing made by movant or which cast doubt on the credibility of movant's witness. *Kidd v. Early, supra.*

In the instant case the dispositive question is whether the affidavit offered by plaintiff in opposition to defendant's motion for summary judgment raises a material question of fact with respect to the element of malice. In my opinion, plaintiff's evidentiary showing raises a factual controversy as to whether or not defendant Williams maliciously caused plaintiff to be prosecuted and casts doubt on the credibility of defendant Williams.

The affidavit offered by plaintiff tends to show that two weeks before Mr. Middleton's arrest, Mr. Williams, a pharmacist, had a conversation with Officer Myers, a member of the Lexington Police Department assigned to the drug squad. In the affidavit Officer Myers asserts that "[i]n the conversation, Mr. Williams and I were discussing information or just who had given me information. I asked him did he ever have any information for me, *and he asked me* did I ever get any information on Mr. Middleton." (Emphasis added.) Sometime later Mr. Williams got word to Officer Myers that he wanted to see him at the pharmacy. At that time Mr. Williams informed Officer Myers that Middleton had drugs in his truck:

"I asked him how did he know that the drugs would be there, and he responded and said *'If I say they will be there, they will be there,'* or something to that wording. That's all I remember Mr. Williams telling me on that occasion. *Mr.*

*Williams made no statement to me that he had overheard any previous conversation from other persons concerning Mr. Middleton,* and he did not relate to me how he knew the drugs would be there. He just responded, *'If I tell you they will be there, they will be there.'* He did not tell me how he learned this information." (Emphasis added.)

Thus, defendant Williams, a pharmacist with access to drugs who two weeks earlier had expressed concern to Officer Myers over Mr. Middleton's possible involvement in illegal drug trafficking, suggested to the officer that Middleton had drugs in his truck. When asked how he knew the drugs would be there, Williams simply stated: "If I say they will be there, they will be there." Viewed indulgently, and given the benefit of every reasonable inference to be drawn therefrom, the affidavit offered by plaintiff gives rise to a permissible inference that defendant Williams planted the drugs in plaintiff's vehicle.

"Aside from express malice, which plaintiff may or may not be able to show at trial, implied malice may be inferred from want of probable cause in reckless disregard of plaintiff's rights. *Taylor v. Hodge,* [229 N.C. 558, 50 S.E. 2d 307 (1948)]; *Dickerson v. Refining Co.,* 201 N.C. 90, 159 S.E. 446 (1931) . . . . In cases grounded on malicious prosecution, probable cause 'has been properly defined as the existence of such facts and circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution.' *Morgan v. Stewart,* 144 N.C. 424, 430, 57 S.E. 149, 151 (1907)." *Pitts v. Pizza, Inc., supra.* On the question of implied malice, the evidence tends to show that defendant Williams overheard portions of a conversation in a restaurant among three young people in which they mentioned that Middleton, a schoolteacher, was a distributor of drugs and would deliver drugs to preselected places. No details as to specific drug deals — past or future — were discussed. On the basis of this hearsay information, defendant Williams insisted to Officer Myers that drugs were to be found in plaintiff's vehicle. Williams refused to disclose to Officer Myers the source of his information; rather, he steadfastly insisted that "[i]f I tell you the drugs will be there, they will be there." When this evidence is viewed in the light most favorable to plaintiff, the party opposing summary judgment, malice may be inferred from the manner in which defendant Williams brought about plaintiff's arrest. Acting on

hearsay information, without probable cause to believe that drugs would *presently* be found in plaintiff's vehicle, defendant Williams recklessly insisted that such was the case, thereby precipitating plaintiff's arrest.

Additionally, I note that the affidavit submitted by plaintiff brings into question the credibility of defendant Williams. In his affidavit, Mr. Williams asserts he informed Officer Myers that the basis for his belief that Mr. Middleton was in possession of drugs was based on a conversation he had overheard in a restaurant. Yet, in his affidavit, Officer Myers asserts that Mr. Williams never said anything to him about an overheard conversation. Thus, the "overheard conversation" could be an afterthought prompted by commencement of the action for malicious prosecution. In his affidavit, Mr. Williams asserts he told Officer Myers that "he had no absolute or definite proof" as to where the drugs would be found. Yet, in his affidavit, Officer Myers asserts Mr. Williams insisted that the drugs would be found in plaintiff's vehicle.

In summary, due consideration of the evidentiary showing made by both parties pursuant to the motion for summary judgment indicates that a genuine issue of fact exists on the question of whether Mr. Williams acted with malice. "If there is any question as to the credibility of witnesses or the weight of evidence, a summary judgment should be denied." 3 Barron and Holtzoff, Federal Practice and Procedure, § 1234 (Wright ed. 1958). *Accord, Moore v. Fieldcrest Mills, Inc.*, supra. Accordingly, I conclude that the trial court's grant of summary judgment for defendant was improper.

In affirming summary judgment for defendant, the majority goes beyond the scope of summary judgment practice and sits instead as a trier of fact. The majority, in effect, credits defendant Williams' assertions that he acted in good faith out of a civic duty and refuses to give any credence, as it must on a motion for summary judgment, to Officer Myers' assertions which put Mr. Williams' actions in a very different light. In my view this case, in its present posture, raises triable issues of fact and credibility which are not susceptible of summary adjudication. Plaintiff may yet suffer a directed verdict for defendant at close of the evidence at trial, but I think he is entitled to offer his evidence notwithstanding.

For the reasons stated I respectfully dissent from the majority opinion and vote to reverse the decision of the Court of Appeals.

Justice COPELAND joins in this dissent.

Justice EXUM dissenting.

Because I believe plaintiff made a sufficient showing to survive defendant Williams' motion for summary judgment, I vote to reverse the decision of the Court of Appeals.

The gravamen of plaintiff's action as alleged against these defendants is that they surreptitiously planted illegal drugs in his truck and on 3 March 1975 instituted criminal proceedings against him for unlawful possession of the drugs. The criminal proceedings against him were dismissed. If at trial plaintiff can prove these allegations, he will have made out a case of malicious prosecution.

On Williams' motion for summary judgment Williams offered his own affidavit to this effect: On 3 March 1975 he overheard three unknown persons discussing drugs. One of them remarked that drugs were obtainable from "Middleton, a school teacher." Recalling that he had earlier discussed local drug problems with Myers, a police officer, and the name "Middleton" had been mentioned, he called Myers and told him that he had "some information about the man we talked about earlier" and that "if this was the same man that I had heard the young men discuss, I felt reasonably certain one or more of the men would be contacting him that same night." Williams said he further told Myers that while he had no "proof" as to where the drugs might be, Middleton's truck would be "as good a place to start as any, since the young men I overheard talking mentioned he made deliveries."

Plaintiff then offered the testimony of James Myers, the other defendant. Myers said that at the time of the incidents in question he was a Lexington police officer. Two weeks before 3 March 1975 he had a conversation with Williams concerning "a person known as Herman Clayton Middleton." Williams first mentioned Middleton and asked Myers if Myers ever got "any information on Mr. Middleton." Myers replied that he "had had some information on him before, not a whole lot but we had some." Later, Myers said, he had a second conversation with Williams.

Apparently this was the conversation that occurred on 3 March 1975 and which ultimately led to Middleton's arrest. In this conversation, held at Williams' insistence, Williams told Myers that Middleton had drugs in his truck. Myers asked Williams how he knew the drugs were there and, according to Myers, Williams said:

> " 'If I say they will be there, they will be there', or something to that wording. That's all I remember Mr. Williams telling me on that occasion. Mr. Williams made no statement to me that he had overheard any previous conversation from other persons concerning Mr. Middleton, and he did not relate to me how he knew the drugs would be there. He just responded, 'If I tell you they will be there, they will be there.' He did not tell me how he learned that information."

Far from tending to show that Williams was without malice and acting in good faith, this evidence, taken together, casts doubt on Williams' credibility and points at least a suspicious finger at Williams in the context of plaintiff's allegations. According to Williams, (1) Middleton "was mentioned" in his first conversation with Myers; (2) he next heard Middleton's name when he overheard the conversation of three unknown persons in a restaurant; (3) while no truck was mentioned in this conversation he told Myers that Middleton's truck was "as good a place to start as any." Myers testified, however, that their first conversation centered on Middleton whose name was suggested by Williams. In their second conversation, instigated by Williams, Williams told him the drugs would be in Middleton's truck. When asked how he knew this, Williams failed to mention the overheard conversation in the restaurant but said something to the effect that, "If I say they will be there, they will be there."

I, of course, do not know where the truth lies in this dispute. Neither do I disagree with the legal principles used by the majority to resolve this case. I simply take a different view of the evidentiary showing and the inferences which might be drawn therefrom. This showing to me demonstrates the existence rather than the non-existence of a material factual issue, *i.e.*, whether Williams did, indeed, plant the drugs in plaintiff's truck as plain-

tiff alleges. This issue should be resolved by a jury—not by the court on a motion for summary judgment.

I also join in the dissent filed by Justice HUSKINS.

Justice COPELAND joins in this dissent.