KATHY JEAN CHIDNESE, PLAINTIFF v. PATRICK N. CHIDNESE AND DIANE McDONALD, DEFENDANTS

No. COA10-195

(Filed 15 March 2011)

### 1. Appeal and Error— interlocutory orders—Rule 54(b) certification

Although plaintiff wife appealed from the trial court's interlocutory order dismissing plaintiff's claims only against defendant husband's attorney, the order included an N.C.G.S. § 1A-1, Rule 54(b) certification that there was no just reason to delay plaintiff's appeal.

### 2. Malicious Prosecution— liability of attorneys—motion to dismiss—vagueness—motion for more definite statement

The trial court erred by dismissing plaintiff wife's claim for malicious prosecution. Attorneys in North Carolina may be held liable for a malicious criminal prosecution only when the attorney

CHIDNESE v. CHIDNESE

[210 N.C. App. 299 (2011)]

advised the client, without any instigation from the client, to initiate criminal proceedings and the attorney acted without probable cause or for an improper purpose. Mere vagueness or lack of detail were not grounds for a motion to dismiss, but should have been attacked by a motion for a more definite statement.

**3. Abuse of Process— civil action—temporary restraining order—motion in the cause—criminal action—information for arrest warrant**

The trial court erred by dismissing plaintiff wife's claim for abuse of process in the civil action because plaintiff properly alleged that defendant husband's attorney did not obtain a temporary restraining order or file a motion in the cause for regular and legitimate functions, but instead provided knowingly false information to the trial court in order to use these processes to gain an advantage over plaintiff in a collateral matter. However, the trial court did not err by dismissing plaintiff wife's claim for abuse of process in the criminal action because the attorney's actions in providing information and assistance to execute the arrest warrant against plaintiff after it had been issued did not constitute an improper act.

**4. Emotional Distress— intentional infliction—failure to show extreme and outrageous behavior**

The trial court did not err by dismissing plaintiff's claim for intentional infliction of emotional distress. Plaintiff's complaint and brief simply stated that defendants' behavior was extreme and outrageous without providing any support for this assertion.

Appeal by plaintiff from order entered 3 December 2009 by Judge Alan Z. Thornburg in Buncombe County Superior Court. Heard in the Court of Appeals 1 September 2010.

*Carter & Kropelnicki, P.A., by Steven Kropelnicki, for plaintiff-appellant.*

*Long, Parker, Warren, Anderson, & Payne, P.A., by William A. Parker and Philip S. Anderson, for defendant-appellee Diane McDonald.*

CALABRIA, Judge.

Kathy Jean Chidnese ("plaintiff") appeals the trial court's order dismissing, with prejudice, all of her claims against defendant Diane

McDonald ("McDonald") pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2009). Plaintiff's claims against defendant Patrick N. Chidnese ("Chidnese") had not been resolved at the time the trial court's order was entered, and as a result, Chidnese is not a party to this appeal. We affirm in part and reverse in part.

## I. Background

According to the allegations contained in plaintiff's complaint, plaintiff married Chidnese on 16 February 1985. The couple lived together until 3 January 2009, when plaintiff left the couple's marital home in Asheville, North Carolina ("the marital home" or "the home"), intending to visit her father in West Virginia and find another place to live. Plaintiff planned to retrieve the substantial amount of her personal belongings that still remained in the home at a later date.

On 19 January 2009, plaintiff called Chidnese to inform him that she intended to return to the marital home to retrieve her belongings. Chidnese asked plaintiff to wait until he removed his belongings the following weekend. Plaintiff agreed. Soon thereafter, Chidnese removed not only his belongings, but also some of plaintiff's belongings from the marital home. On 23 January 2009, Chidnese and his attorney, McDonald (collectively "defendants") initiated an action against plaintiff in Buncombe County District Court ("the civil action"). On or about 30 January, Chidnese had the utilities at the marital home turned off, and no one lived in the home after that date.

On or about 21 February 2009, Chidnese instructed the Chideneses' daughter to call plaintiff to inform her that she could remove her belongings from the marital home. Plaintiff drove to Asheville from her new residence in Indiana. When she arrived at the home on 2 March 2009, she found that the doors were locked and the home was vacant.

When plaintiff entered the home, she found that many of her personal effects were missing. Plaintiff removed the remainder of her belongings, but did not remove any of Chidnese's property or any property to which Chidnese had any rightful claim. Plaintiff was unaware that defendants had instructed the parties' daughter to ask plaintiff to return to the marital home to retrieve her belongings. Defendants obtained an *ex parte* temporary restraining order ("the restraining order") against plaintiff in the civil action on 27 February 2009. Pursuant to the restraining order, plaintiff could neither enter the marital home nor "remove, secrete, sell and/or destroy any marital

personal property . . . ." Plaintiff was not served with the restraining order until 3 March 2009. The restraining order indicated that a hearing on the order was scheduled for 5 March 2009.

On 3 March 2009, McDonald filed a "Motion in the Cause" in the civil action alleging that plaintiff had broken and entered the marital home and removed items of marital personal property. The motion requested an order for plaintiff to immediately return these items.

On 5 March 2009, Chidnese appeared before a magistrate and alleged that plaintiff had removed items of marital property from the marital home, failed to return the items after ordered to do so, and committed the offense of domestic criminal trespass, in violation of N.C. Gen. Stat. § 14-134.3(A) (2009). A warrant was issued for plaintiff's arrest, and plaintiff was arrested on 10 March 2009, while meeting with her attorney. Plaintiff alleges that McDonald advised Chidnese to have plaintiff arrested on false charges.

On 15 April 2009, plaintiff's criminal case was calendared in Buncombe County District Court. McDonald appeared on behalf of Chidnese and filed a motion to continue the case until a later date. In support of the motion, McDonald included two letters from medical professionals stating that Chidnese would be unable to testify against plaintiff for an indefinite period of time. The motion to continue the case was granted, but the Buncombe County district attorney later dismissed the charges.

On 18 August 2009, plaintiff initiated an action against defendants in Buncombe County Superior Court. In her complaint, plaintiff asserted claims of malicious prosecution, abuse of process, and intentional infliction of emotional distress ("IIED") against both defendants. On 19 October 2009, McDonald filed a motion to dismiss plaintiff's action. After hearing McDonald's motion, the trial court dismissed all claims against her with prejudice on 3 December 2009. Plaintiff appeals.

## II. Interlocutory Appeal

[1] As an initial matter, we note that the trial court's order dismissing plaintiff's claims against McDonald is interlocutory, as it does not dispose of the entirety of the case.

> An appeal from an interlocutory order is permissible only if [(1)] the trial court certified the order under Rule 54(b) of the Rules of Civil Procedure, or (2) the order affects a substantial right that

〉

would be lost without immediate review. The burden rests on the appellant to establish the basis for an interlocutory appeal.

*Harco National Ins. Co. v. Grant Thornton LLP*, —— N.C. App. ——, ——, 698 S.E.2d 719, 722 (2010) (citation omitted). In the instant case, the trial court's order indicated that it dismissed "all claims" against McDonald pursuant to Rule 12(b)(6) and included a Rule 54(b) certification that there was no just reason to delay plaintiff's appeal.

> Rule 54(b) certification by the trial court is reviewable by this Court on appeal in the first instance because the trial court's denomination of its decree a final . . . judgment does not make it so, if it is not such a judgment. Similarly, the trial court's determination that there is no just reason to delay the appeal, while accorded great deference, cannot bind the appellate courts because ruling on the interlocutory nature of appeals is properly a matter for the appellate division, not the trial court.

*First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 247, 507 S.E.2d 56, 60 (1998) (internal quotations and citations omitted).

Rule 54(b) allows the trial court to "enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal. . . ." N.C. Gen. Stat. § 1A-1, Rule 54(b) (2009). "A final judgment is one which disposes of the cause[,] . . . leaving nothing to be judicially determined between [the parties] in the trial court. . . ." *Veazey v. Durham*, 231 N.C. 354, 361-62, 57 S.E.2d 377, 381 (1950). "Under G.S. § 1A-1, Rule 54(b), when multiple parties are involved in an action, the court may enter a final judgment as to one or more but fewer than all of the parties. Such a judgment, though interlocutory for appeal purposes, shall then be subject to review if the trial judge certifies that there is no just reason for delay." *Hoots v. Pryor*, 106 N.C. App. 397, 401, 417 S.E.2d 269, 272 (1992). The trial court's order dismissing all claims against McDonald constituted a final judgment between plaintiff and McDonald because it left "nothing to be judicially determined" between them. *Veazey*, 231 N.C. at 361, 57 S.E.2d at 381. Since the order also included a Rule 54(b) certification that there was no just reason to delay plaintiff's appeal, plaintiff's appeal is properly before this Court. *Hoots*, 106 N.C. App. at 401, 417 S.E.2d at 272. ·

CHIDNESE v. CHIDNESE

[210 N.C. App. 299 (2011)]

### III. Standard of Review

The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true.

Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Scheerer v. Fisher*, —— N.C. App. ——, ——, 688 S.E.2d 472, 474 (2010) (citations omitted). "A complaint should not be dismissed for failure to state a claim unless it appears to a certainty that plaintiff is legally entitled to no relief under any construction of the facts asserted." *Powell v. Wold*, 88 N.C. App. 61, 63, 362 S.E.2d 796, 797 (1987). "The standard of review on an appeal of a grant of a motion to dismiss is *de novo*." *Scheerer*, —— N.C. App. at ——, 688 S.E.2d at 474.

### IV. Malicious Prosecution and Abuse of Process

[2] Plaintiff argues that the trial court erred by dismissing her claims for malicious prosecution and abuse of process against McDonald. We agree.

"Protection against wrongful litigation is afforded by a cause of action for either abuse of process or malicious prosecution. The legal theories underlying the two actions parallel one another to a substantial degree, and often the facts of a case would support a claim under either theory." *Stanback v. Stanback*, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979), *overruled on other grounds by Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). "The distinction between an action for malicious prosecution and one for abuse of process is that malicious prosecution is based upon malice in causing the process to issue, while abuse of process lies for its improper use after it has been issued." *Barnette v. Woody*, 242 N.C. 424, 431, 88 S.E.2d 223, 227 (1955).

A. Malicious Prosecution

"An action in tort for malicious prosecution is based upon a defendant's malice in causing process to issue." *Middleton v. Myers*, 299 N.C. 42, 44, 261 S.E.2d 108, 109 (1980). To prove a claim for malicious prosecution, a plaintiff must establish four elements: (1) the defendant instituted, procured, or participated in a criminal proceeding against the plaintiff; (2) without probable cause; (3) with malice; and (4) the criminal proceeding terminated in favor of the plaintiff. *Cook v. Lanier*, 267 N.C. 166, 147 S.E.2d 910 (1966). The only element at issue in the instant case is whether McDonald instituted, procured, or participated in a criminal proceeding against the plaintiff. There is no dispute that plaintiff's complaint alleges that the criminal proceeding against her was procured without probable cause, with malice, and that the criminal proceeding was dismissed.

Initially, we note that plaintiff's complaint alleges that McDonald was liable for malicious prosecution in her role as Chidnese's attorney. Both parties appear to agree that an attorney may be held liable for malicious prosecution in certain circumstances. However, the parties dispute whether an attorney can be held liable for a criminal proceeding that is initiated by a client. No North Carolina case has ever been directly presented with this question. Nonetheless, this Court's decision in *Jackson v. Jackson*, 20 N.C. App. 406, 201 S.E.2d 722 (1974) provides implicit support for the proposition that attorneys in North Carolina may be liable for a malicious criminal prosecution initiated by a client.

In *Jackson*, the plaintiff initiated, *inter alia*, a malicious prosecution action against his wife and four partners in a law firm, alleging that one of the members of the firm, James N. Golding ("Golding"), had conspired with plaintiff's wife to institute criminal proceedings against the plaintiff maliciously and without probable cause. *Id.* at 406, 201 S.E.2d at 722. The criminal proceedings were initiated by the plaintiff's wife after she had consulted with Golding. *Id.* The remaining three partners sought and obtained summary judgment on the basis that they did not participate or authorize any acts which led to the prosecution of the plaintiff. *Id.* This Court affirmed the grant of summary judgment, holding that the three law partners could not be held vicariously liable for the alleged malicious prosecution actions of Golding because "it [could not] be held that malicious prosecution is within the ordinary course of business of a law partnership." *Id.* at 408, 201 S.E.2d at 724. The *Jackson* Court based its holding primarily

upon the relevant provisions of the North Carolina Canons of Professional Ethics and the North Carolina State Bar Code of Professional Responsibility which were in effect at that time. *Id.*

Although the *Jackson* Court was not directly presented with the question of whether an attorney may be held liable for a malicious criminal prosecution initiated by a client, its reasoning strongly suggests that such liability exists. As explained by the Court:

> Advising the initiation of a criminal prosecution is clearly within the normal range of activities for a typical law partnership, but taking such action maliciously and without probable cause is quite a different matter. In this case the acting partner, Mr. Golding, *was either conducting himself lawfully and ethically in his relationship with his client, in which event neither he nor any of his partners would have any liability, or he was conducting himself maliciously and unlawfully and would not be acting in the ordinary course of the partnership business.*

*Id.* at 407-08, 201 S.E.2d at 723 (emphasis added). Thus, the *Jackson* Court drew a distinction between an attorney who advises a client to initiate a criminal proceeding in good faith, in which case the Court held that there would be *no liability for either the attorney or his law partners*, and an attorney who maliciously and unlawfully advises a client to initiate a criminal proceeding, in which case there would only be *no vicarious liability to the attorney's partners*. While the *Jackson* Court does not explicitly address the liability of the attorney in the latter scenario, the implication is that an attorney who maliciously and unlawfully advised a client to initiate a malicious prosecution would meet all elements of the tort of malicious prosecution, including procurement, and would be directly liable for that tort. Thus, taking the reasoning of *Jackson* to its logical conclusion, we hold that an attorney may be held liable for a malicious criminal prosecution initiated by a client in certain circumstances, assuming all elements of the tort are met.

However, McDonald still contends that her specific involvement in the instant case as Chidnese's attorney did not amount to the institution, procurement, or participation in the criminal proceeding against plaintiff. *Jackson* itself does not provide substantial guidance on what would constitute procurement of a malicious prosecution by an attorney; it only refers generally to "[a]dvising the initiation of a criminal prosecution . . . maliciously and without probable cause." *Id.* at 407, 201 S.E.2d at 723. Additionally, our research reveals no cases

which have directly addressed the question of what constitutes procurement by an attorney in this context. However, the Restatement (Second) of Torts creates the following framework for determining whether a lawyer should be held liable for procuring a malicious prosecution initiated by a client:

> *Procurement by attorneys.* An attorney at law who is consulted by a client as to whether the facts laid before him are sufficient to justify the initiation of criminal proceedings, does not by advising his client to commence a prosecution procure the institution of the proceedings that are brought by his client. (See Illustration 6 below). Under other circumstances, however, the connection of the attorney with the proceedings may be such a decisive factor as to justify a finding that the attorney procured their institution. *Thus if a client lays before his attorney certain facts and asks the attorney's advice as to what course he should pursue in order to secure some private advantage, and the attorney advises him that the best way in which to obtain the desired result is to initiate criminal proceedings, it may be found that the attorney procured the institution of the proceedings.*

Restatement (Second) of Torts, § 653 cmt. h (1977) (emphasis added). In addition, the Restatement (Third) of the Law Governing Lawyers[1] also briefly explains how lawyers may be liable for criminal malicious prosecution initiated by their clients, including a discussion of what constitutes procurement:

> A private lawyer representing a client, for example a complaining witness, could under certain circumstances be liable for malicious prosecution. To establish such liability, a plaintiff must show that the lawyer procured the initiation of criminal proceedings, *for example by advising the client to institute them, as opposed to informing the client of available legal options* (see Restatement Second, Torts § 653, Comment h). It is also necessary that the lawyer acted without good cause and primarily for a purpose other than bringing an offender to justice or assisting a client to assert the client's rights. The lack of probable cause and improper purpose of a lawyer are assessed separately from those of a client, and the burden of persuading the trier of fact of their

---

1. The Restatement (Second) of Torts (1977) will henceforth be referred to as "the Restatement (Second)." The Restatement (Third) of the Law Governing Lawyers (2000) will henceforth be referred to as "the Restatement (Third)." They will collectively be referred to as "the Restatements."

existence rests on the plaintiff in the malicious-prosecution action.

Restatement (Third) of the Law Governing Lawyers § 57 cmt. e (2000) (emphasis added).

These provisions in the Restatements indicate that in those situations in which the attorney alone suggests the initiation of malicious criminal proceedings, without any impetus from the client, the attorney may be held to have procured the malicious prosecution. The Restatement (Second) demonstrates this principle with the following examples:

> 6. A, who believes that B is unlawfully withholding certain chattels from him, seeks the advice of his attorney, C. C advises him that a criminal prosecution is the only practical method of forcing B to return the chattels. A swears out a warrant for the arrest of B. C has procured the institution of the proceedings against B.

> 7. A goes to his attorney B and states that valuable jewelry has disappeared from his house under circumstances that make him believe that it must have been stolen by his only servant, C. A asks whether, assuming these facts to be true, he is justified in swearing out a warrant for the arrest of C for larceny. B advises A that it is proper for him to do so. A swears out the warrant. B has not procured the·institution of proceedings against C.

Restatement (Second) of Torts § 653, cmt. h, Illustrations 6-7. The main difference between these two illustrations is that in the former, it is the attorney who first specifically suggests the criminal prosecution, thus procuring the prosecution. In contrast, in the latter illustration, it is the client who first inquires about the criminal prosecution, and consequently, the criminal prosecution was not procured by the attorney. Thus, under the Restatements, an attorney procures a malicious prosecution only when that attorney counsels the client specifically to initiate a criminal proceeding without the client first seeking counsel about initiating such a proceeding. Accordingly, we hold that an attorney should be considered to have procured a malicious criminal prosecution initiated by a client only when the attorney advises the client, without any instigation from the client regarding a criminal prosecution, to initiate criminal proceedings.

However, it is important to ensure that an attorney is not punished for zealously and lawfully advocating for a client whose improper motives are unknown to the attorney. Therefore, when

assessing the liability of an attorney, we adopt as a framework the following previously quoted language of the Restatement (Third):

> It is also necessary that the lawyer acted without good cause and primarily for a purpose other than bringing an offender to justice or assisting a client to assert the client's rights. The lack of probable cause and improper purpose of a lawyer are assessed separately from those of a client[.]

Restatement (Third) of the Law Governing Lawyers § 57 cmt. e. Under this framework, a plaintiff who seeks to recover in tort against an attorney for malicious criminal prosecution must prove all of the elements of the tort separately from the liability of the client.

Finally, to provide attorneys additional protection, we adopt the exception to liability for malicious criminal prosecution established by the Restatement (Third): "A lawyer . . . procuring the institution of criminal proceedings by a client is not liable to a nonclient for . . . malicious prosecution if the lawyer has probable cause for acting, or if the lawyer acts primarily to help the client obtain a *proper* adjudication of the client's claim in that proceeding." Restatement (Third) of the Law Governing Lawyers § 57(2) (emphasis added). This is consistent with the *Jackson* Court's statement that when an attorney is "conducting himself lawfully and ethically in his relationship with his client, . . . neither he nor any of his partners would have any liability." *Jackson*, 20 N.C. App. at 407, 201 S.E.2d at 723.

Applying these principles to the instant case, plaintiff's complaint states a valid cause of action for malicious prosecution against McDonald. Plaintiff's complaint makes the following relevant allegations:

> 32. On information and belief, attorney McDonald advised and counseled Mr. Chidnese to have plaintiff arrested on false charges, and he paid substantial sums for her advice and assistance in procuring plaintiff's arrest without probable cause.
>
> . . .
>
> 46. As set out above, Mr. Chidnese procured a warrant for plaintiff's arrest by giving false testimony to Magistrate Wadhams.
>
> . . .
>
> 50. The criminal charges against plaintiff were dismissed.
>
> . . .

52. Ms. McDonald counseled, encouraged, aided and abetted Mr. Chidnese in his malicious prosecution of plaintiff.

53. In all of the foregoing, defendants acted maliciously, willfully, and intentionally, with full knowledge of the falsity of the charges instigated against plaintiff, and with the intent to deprive her of her liberty and cause her severe embarrassment, humiliation, and emotional distress.

Treating these allegations as true, these facts can be construed to state that McDonald procured a criminal prosecution against plaintiff with malice and without probable cause, and that the prosecution terminated favorably for the plaintiff, satisfying all of the elements of malicious prosecution. *Middleton*, 299 N.C. at 44, 261 S.E.2d at 109. While plaintiff's allegations do not definitely reveal whether McDonald actually procured the criminal prosecution by initiating the idea with Chidnese, "[m]ere vagueness or lack of detail is not ground for a motion to dismiss, but should be attacked by a motion for a more definite statement." *Gallimore v. Sink*, 27 N.C. App. 65, 67, 218 S.E.2d 181, 183 (1975) (citations omitted). Since it does not appear to "a certainty that plaintiff is legally entitled to no relief under any construction of the facts asserted[,]" *Powell*, 88 N.C. App. at 63, 362 S.E.2d at 797, the trial court erred by dismissing plaintiff's malicious prosecution claim. Consequently, that portion of the trial court's order must be reversed.

### B. Abuse of Process

[3] "[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attended [sic] to be secured." *Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965).

[A]buse of process requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding, and that [b]oth requirements relate to the defendant's purpose to achieve through the use of the process some end foreign to those it was designed to effect. The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by defendant or used by him to achieve a collateral purpose not within the normal scope of the process

used. The act requirement is satisfied when the plaintiff alleges that once the prior proceeding was initiated, the defendant committed some wilful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter.

*Stanback*, 297 N.C. at 201, 254 S.E.2d at 625 (internal quotations and citations omitted).

Initially, we once again note that the allegations against McDonald involve her conduct as an attorney. As with the tort of malicious prosecution, an attorney's liability for abuse of process must be assessed separately from the client's, and the attorney's actions must independently satisfy each element of the tort. Additionally, a lawyer should not be liable for abuse of process "when the lawyer acted for some proper purpose, such as securing adjudication of the client's claim, even though this would also procure the lawyer a fee. However, a lawyer may be liable for acting for an improper purpose . . . ." Restatement (Third) of the Law Governing Lawyers § 57 cmt. d.

It is undisputed that plaintiff's complaint alleged that defendants, including McDonald, acted with an ulterior purpose. However, the parties disagree about whether the actions of McDonald were for an improper purpose and thus constituted "the use of legal process not proper in the regular prosecution of the proceeding."

"[T]he gravamen of a cause of action for abuse of process is the improper use of the process *after it has been issued.*" *Petrou v. Hale*, 43 N.C. App. 655, 659, 260 S.E.2d 130, 133 (1979) (emphasis added). As a result, "[t]here is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." *Finance Corp. v. Lane*, 221 N.C. 189, 196-97, 19 S.E.2d 849, 853 (1942). In accordance with this principle, our courts have repeatedly upheld dismissal of an abuse of process claim when there are no allegations that a defendant misused process *after* proceedings had been initiated. For example, in *Stanback*, our Supreme Court affirmed the dismissal of an abuse of process claim when the plaintiff alleged that the true purpose of an action brought against her "was not to seek legitimate relief but to harass, embarrass and annoy the plaintiff . . . and to cause her to incur expenses for the defense of said action and to cause her to forego her legal rights and remedies." 297 N.C. at 200, 254 S.E.2d at 624. Since the plaintiff failed to allege "that defendant committed any wilful act not proper in the

regular course of the proceeding once he initiated the suit against her," her abuse of process claim was properly dismissed. *Id.*; *see also, e.g., Petrou,* 43 N.C. App. at 659, 260 S.E.2d at 134-35 (The plaintiff's allegation "[t]hat the sole purpose of the Defendants and each of them, in filing and maintaining said action, was to coerce the Plaintiff and his malpractice insurance carrier into making a cash settlement in order to free themselves from said false, malicious, and vexacious [sic] litigation" did not allege "any evidence of subsequent misuse of process lawfully issued" and thus, could not support an abuse of process claim); *Hewes v. Johnston,* 61 N.C. App. 603, 604, 301 S.E.2d 120, 121 (1983) (no abuse of process claim when complaint "alleges a motive of harassment in the filing of suit by third-party defendants, but there is no allegation of an improper wilful act during the course of the proceedings."). As these cases indicate, the mere filing of a civil action with an ulterior motive is not sufficient to sustain a claim for abuse of process.[2] In order to proceed on an abuse of process claim, a plaintiff must allege the misuse of process after an action between the parties has already commenced.

## 1. The Civil Action

In the instant case, plaintiff's complaint does not allege that defendants improperly filed the civil action with an ulterior purpose. Instead, plaintiff's complaint makes the following allegations about defendants' misuse of process *after* the civil action had been initiated:

54. Defendants abused the process of the Buncombe County District Court in that they obtained a temporary restraining order *without notice*, knowing that there existed no just cause for the issuance of such an order, knowing that Mr. Chidnese already had removed all of the items of "marital property" which had any substantial value and which were easily movable, and knowing that plaintiff would suffer substantial expense and inconvenience if she were deprived of possession of the clothing and personal effects he had left in the house.

. . .

22. Defendants had no reason to believe that plaintiff had any intention of removing any property from the house for any

2. However, the *Stanback* Court determined that the plaintiff's complaint, while failing to state a claim for abuse of process, would have stated a valid claim for malicious prosecution if the plaintiff had also alleged special damages. 297 N.C. at 204-05, 254 S.E.2d at 626.

improper purpose, or that she intended to remove anything except her personal belongings.

23. Defendants in fact knew that before they applied for or obtained that *ex-parte* restraining order, that Mr. Chidnese had instructed his daughter to tell plaintiff that she was free to go into the house and get her belongings.

24. There was, in fact, no lawful basis for the issuance of any *ex-parte* restraining order, and defendants obtained that order merely to harass, inconvenience, and annoy plaintiff, and to punish her for separating from defendant Chidnese.

. . .

26. On 3 March 2009 McDonald filed a "Motion in the Cause" in the civil action alleging that plaintiff and her agents "broke and entered the property located " [the marital property] and did remove many items of marital personal property and returned to Indiana with the said items." That motion requested that plaintiff be required immediately to "return all items of marital property removed from the parties' marital home."

27. Defendants knew when that motion was filed that plaintiff had not in fact "broke and entered" the former marital residence.

. . .

55. Defendants abused the process of the Buncombe County District Court by obtaining an *ex parte* order requiring plaintiff to return to Buncombe County the clothing and personal effects which she had removed from the former marital residence.

These allegations, when treated as true, sufficiently state a cause of action against McDonald for abuse of process. While it is true that obtaining an *ex parte* temporary restraining order ("TRO") is permitted in a civil action, the Rules of Civil Procedure require that a TRO only issue when "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." N.C. Gen. Stat. § 1A-1, Rule 65 (2009). In contrast, plaintiff's complaint alleged that McDonald specifically knew that there was no basis to obtain a TRO, and that the restraining order was only obtained to harass, inconvenience, and annoy plaintiff, and to punish her for separating from Chidnese. Moreover, plaintiff alleged that McDonald, with the same ulterior motive and for the same improper purpose, filed a motion in the cause stating that plain-

tiff had violated the restraining order, even though McDonald knew that plaintiff had permission to enter the marital home and retrieve her belongings. Thus, under the allegations in plaintiff's complaint, McDonald did not obtain a TRO or file a motion in the cause for their regular and legitimate functions, but instead provided knowingly false information to the trial court in order to use these processes to gain an advantage over plaintiff in a collateral matter. This constitutes a valid claim for abuse of process. *See Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 603, 646 S.E.2d 826, 831 (2007) (complaint stated a valid cause of action for abuse of process when it alleged that the defendant sought an injunction to coerce the plaintiffs to pay a judgment for which they were not responsible and to oppress their business activities until such judgment was paid); *Hewes v. Wolfe and Hewes v. Johnston*, 74 N.C. App. 610, 614, 330 S.E.2d 16, 19 (1985) (complaint stated a valid cause of action for abuse of process when it alleged that, while another civil action between the parties was pending, the defendants maliciously filed notices of *lis pendens* and notices of lien on property owned by the plaintiffs "for the purpose of injuring and destroying the credit business of the plaintiffs and in general to oppress the plaintiffs[]."). Consequently, the trial court erred in dismissing plaintiff's abuse of civil process claim.

2. The Criminal Action

Plaintiff's complaint also alleged that McDonald was liable for abuse of process in the criminal proceedings against plaintiff, based on the following allegations:

38. After her arrest plaintiff was ordered to appear in Buncombe County District Court on 15 April 2009 to answer to the false charges. At that time Ms. McDonald appeared and filed a motion to continue the criminal case. Attached to that motion was a paper-writing purporting to be a letter from one Stephen D. Brown, M.D., stating that Patrick Chidnese was his patient and "due to his emotional and physical condition, should not testify on April 15 in a court of law, or have any confrontation, if possible, with his wife, Kathy for an indeterminate period of time thereafter.["]

39. Ms. McDonald also presented a document purporting to be a letter from Emily C. Gordon, PhD, stating that in her professional opinion, Mr. Chidnese would not be able to testify "now or in the foreseeable future in the case concerning his estranged wife."

40. Mr. Chidnese in fact suffered from no condition on 15 April 2009 which would have prevented him from appearing in court or testifying in the criminal case which he instigated against plaintiff. He procured false statements in support of his lawyer's motion to continue that matter solely for the purpose of causing Ms. Chidnese to waste time and incur expense traveling from Indiana to North Carolina, only to have the case continued. On information and belief, Ms. McDonald counseled him to seek the continuance and file the affidavits.

. . .

56. After Mr. Chidnese gave false testimony to obtain the issuance of a warrant for plaintiff's arrest, defendants abused that process by:

> A. Hiring agents to arrange for plaintiff's arrest while she was attempting to confer with the counsel she hired to protect her interest in the civil action;
>
> . . .
>
> C. Filing the motion to continue the criminal case (which Ms. McDonald did not cause to be served on plaintiff's counsel of record in the criminal case) and obtaining a continuance solely for the purpose of harassing and annoying plaintiff and subjecting her to unnecessary inconvenience and expense.

Plaintiff's complaint essentially alleges that McDonald was liable for abuse of process on the basis of two actions: 1) assisting in obtaining plaintiff's arrest; and 2) filing a motion to continue in the criminal case. However, McDonald's actions in providing information and assistance to execute the arrest warrant against plaintiff after it had been issued did not constitute an improper act during the course of a criminal proceeding, and thus cannot provide the basis for an abuse of process claim. *Stanback*, 297 N.C. at 200, 254 S.E.2d at 624.

In addition, there is nothing in plaintiff's complaint regarding the filing of the motion to continue in the criminal case which suggests that McDonald's actions were improper. Taking the allegations as true, it was Chidnese who procured false statements which were submitted to the trial court. Unlike plaintiff's malicious prosecution claim, which specifically alleged that McDonald knew there was no basis for criminal charges against plaintiff, this particular abuse of process claim contains no allegation that McDonald knew that the

letters from Stephen D. Brown, M.D. and Emily C. Gordon, Ph.D. were false or that Chidnese in fact was not suffering from a mental condition. Plaintiff merely alleged that McDonald counseled Chidnese to seek the continuance and file the letters in support of that motion. Since plaintiff is seeking to have McDonald found liable as an attorney for abuse of process, her claim must include specific allegations that establish that McDonald acted with an improper purpose. Without an allegation that McDonald knew that the letters were false and thus provided no basis for a motion to continue, McDonald's actions can only be construed as properly securing adjudication of her client's claim. McDonald cannot be held liable as an attorney under these circumstances, and so the trial court properly dismissed plaintiff's abuse of process claims against McDonald which related to her actions during the criminal proceedings against plaintiff. Plaintiff's argument to the contrary is overruled.

## V. Intentional Infliction of Emotional Distress

[4] Plaintiff argues that the trial court erred by dismissing her claim for IIED against Ms. McDonald. We disagree.

The essential elements of a claim for IIED are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens*, 302 N.C. at 452, 276 S.E.2d at 335.

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion.
>
> . . .

*Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (quoting Restatement (Second) of Torts § 46 cmt. d)." 'Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 373, 618 S.E.2d 867, 872 (2005) (quoting *Guthrie v. Conroy*,

CHIDNESE v. CHIDNESE

[210 N.C. App. 299 (2011)]

152 N.C. App. 15, 22, 567 S.E.2d 403, 408-09 (2002)). "The determination whether conduct rises to the level of extreme and outrageous behavior is a question of law." *Foster v. Crandell*, 181 N.C. App. 152, 168, 638 S.E.2d 526, 537 (2007).

Plaintiff's complaint and brief simply state that defendants' previously discussed behavior was extreme and outrageous, without providing any support or case for this assertion. However, "this Court has set a high threshold for a finding that conduct meets the standard" of extreme and outrageous conduct. *Dobson v. Harris*, 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000). Based upon this principle, the *Dobson* Court held that falsely reporting child abuse did not constitute extreme and outrageous conduct. *Id.* In *Moore v. City of Creedmoor*, this Court held that causing the District Attorney to file a nuisance abatement action against the plaintiff's nightclub did not constitute extreme and outrageous conduct, even if the facts may have supported a malicious prosecution action. 120 N.C. App. 27, 48, 460 S.E.2d 899, 911 (1995), *aff'd in part and rev'd in part on other grounds*, 345 N.C. 356, 481 S.E.2d 14 (1997).

Plaintiff's specific allegations against McDonald in the instant case[3] do not differ substantially from the conduct at issue in *Dobson* and *Moore*. Thus, while McDonald's alleged conduct would be unprofessional and sufficient to give rise to other tort claims, it did not "exceed[] all bounds of decency tolerated by society[,]" *West v. King's Dep't Store, Inc.*, 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988), and therefore does not constitute extreme and outrageous conduct as a matter a law. While not binding on our decision, we note that courts in other jurisdictions have reached the same result on similar facts. *See Bozman v. Bozman*, 806 A.2d 740, 747 (Md. Ct. Spec. App. 2002) (wife's filing of false criminal charges against husband which resulted in his arrest and incarceration on five occasions did not constitute outrageous conduct), *rev'd on other grounds*, 830 A.2d 450 (2003); *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. App. Ct. 2d Dist. 1991) (a false statement to the police that the plaintiff harassed, assaulted, and verbally threatened a coworker did not rise to the level of extreme and outrageous conduct); *Slatkin v.*

---

3. The complaint alleges that Chidnese engaged in additional conduct which plaintiff contended would also constitute extreme and outrageous conduct. However, as these additional allegations are unnecessary to our analysis of McDonald's liability, we do not address what impact, if any, these additional allegations have on Chidnese's liability.

*Lancer Litho Packaging Corp.*, 33 A.D.3d 421, 422 (N.Y. App. Div. 1st Dep't 2006) ("instigation of the individual plaintiff's arrest by means of false statements to the police" did not constitute extreme and outrageous conduct). Since plaintiff's complaint does not contain allegations which satisfy all of the elements of IIED, the trial court properly dismissed this portion of plaintiff's complaint against McDonald. This argument is overruled.

## VI. Conclusion

Treating her allegations as true, plaintiff's complaint alleges facts that could be construed to find that McDonald, acting as Chidnese's attorney, procured a criminal proceeding against plaintiff with malice and without probable cause, and that the proceeding terminated in plaintiff's favor. As a result, plaintiff's complaint states a valid cause of action against McDonald for malicious prosecution. That portion of the trial court's order dismissing plaintiff's malicious prosecution claim against McDonald is reversed.

Additionally, plaintiff's complaint contains allegations that McDonald misused legal process with an ulterior purpose after the civil action had been initiated. These allegations stated a valid cause of action against McDonald for abuse of process in the civil action. That portion of the trial court's order dismissing plaintiff's abuse of process claim based upon McDonald's conduct in the civil action is also reversed.

However, the allegations in plaintiff's complaint regarding McDonald's conduct in the criminal action did not state a valid abuse of process claim. Treating plaintiff's allegations as true, McDonald did not use the criminal process for an improper purpose when she helped secure plaintiff's arrest pursuant to a valid warrant. In addition, McDonald was only acting for the proper purpose of securing adjudication of her client's claim when she filed the motion to continue on his behalf. Accordingly, that portion of the trial court's order dismissing plaintiff's abuse of process claim based upon McDonald's conduct in the criminal action is affirmed.

Finally, the trial court properly dismissed plaintiff's IIED claim against McDonald. The specific conduct by McDonald which formed the basis of plaintiff's IIED claim did not rise to the level of extreme and outrageous conduct as a matter of law. Consequently, the portion of the trial court's order dismissing plaintiff's IIED claim against McDonald is affirmed.

Affirmed in part and reversed in part.

Judges McGEE and GEER concur.