Bloxsom v. Choquette, 2021 NCBC 57.

STATE OF NORTH CAROLINA

CABARRUS COUNTY

JOHN BLOXSOM; REBECCA
BLOXSOM; HEATH DRYE;
CAROLINE DRYE; TINTU
PARAMESWAR; and DONNA
PARAMESWAR, individually and
derivatively on behalf of Saratoga
Homeowners Association,

Plaintiffs,

v.

NEAL CHOQUETTE; WENDY
CHOQUETTE; GARY CHOQUETTE;
AMERICAN LAND CORPORATION
– CHARLOTTE, INC.; ATLANTIC
GRADING CO. INC. f/k/a NO
SNIVELING GRADING CO. INC.;
CEDAR PROPERTY
MANAGEMENT, LLC n/k/a
AUSTERLITZ PROPERTY
MANAGEMENT, LLC; and PAYNE
ROCK INVESTMENTS, LLC,

Defendants,

and

SARATOGA HOMEOWNERS
ASSOCIATION,

Nominal
Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 3334

**ORDER AND OPINION ON MOTIONS
TO DISMISS**

THIS MATTER is before the Court on the Motion to Dismiss of Nominal

Defendant Saratoga Homeowners Association (the "Association") (ECF No. 6); the

Motion to Dismiss of Defendants Neal Choquette, Wendy Choquette, Gary Choquette

and American Land Corporation–Charlotte, Inc. ("American Land") (ECF No. 11);

and the Motion to Dismiss of Plaintiffs as to certain counterclaims asserted by

Defendants Neal Choquette, Wendy Choquette, Gary Choquette, and American Land (ECF No. 39).

THE COURT, having considered the Motions, the briefs filed by the parties, the applicable law, arguments of counsel, and all matters of record, CONCLUDES that the Motions should be GRANTED in part and DENIED in part for the reasons set forth below.

> *Fitzgerald Litigation by Andrew Fitzgerald and Stuart Punger for Plaintiffs John Bloxsom, Rebecca Bloxsom, Heath Drye, and Caroline Drye.*
>
> *Weaver, Bennett & Bland, P.A., by Bo Caudill for Plaintiffs Donna Parameswar and Tintu Parameswar.*
>
> *Devore, Acton and Stafford, P.A., by F. William DeVore, IV for Defendants Neal Choquette, Wendy Choquette, Gary Choquette, and American Land Corporation – Charlotte, Inc.*
>
> *Hamilton Stephens Steele + Martin, PLLC, by M. Aaron Lay and Graham Morgan for Defendants Atlantic Grading Co., Inc. f/k/a No Sniveling Grading Co. Inc.; Cedar Property Management, LLC n/k/a Austerlitz Property Management, LLC; and Payne Rock Investments, LLC.*
>
> *Offit Kurman, P.A., by Keith B. Nichols and Amy P. Hunt for Nominal Defendant Saratoga Homeowners Association.*

Davis, Judge.

## INTRODUCTION

1.      The admonition to "Love thy Neighbor" has been in existence since time immemorial.  The parties to this case, however, have instead embraced the entirely separate maxim of "Sue thy Neighbor," engaging in a seemingly nonstop barrage of lawsuits against one another.  In the present action, six residents of a Cabarrus County neighborhood known as Saratoga have sued the members of their

homeowners' association's board of directors (the "Board"), alleging a nefarious course of conduct rife with conflicts of interest, ineptitude, and retaliation. In response, Defendants have asserted counterclaims in which they accuse Plaintiffs of engaging in a concerted scheme to drive them out of the neighborhood.

## FACTUAL AND PROCEDURAL BACKGROUND

2. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites those facts contained in the Complaint and documents attached to the Complaint that are relevant to the Court's determination of the Motions. *See, e.g., Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681 (1986); *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017). Accordingly, the following facts are drawn from Plaintiffs' Complaint and the relevant governing documents of the Association referred to in the Complaint.

### A. The Parties

3. The residential neighborhood "Saratoga" is located in Cabarrus County, North Carolina. (ECF No. 8.1, at p. 1.) The Association—named in this action as a nominal defendant—is the homeowners' association that encompasses all lots in Saratoga. (*Id.*) The Association is a North Carolina nonprofit corporation with its principal office in Mecklenburg County, North Carolina. (ECF No. 8.2, at p. 1.)

4. Plaintiffs John Bloxsom, Rebecca Bloxsom, Heath Drye, Caroline Drye, Tintu Parameswar, and Donna Parameswar (collectively, "Plaintiffs") all live in Saratoga and are all members of the Association. (ECF No. 3, at ¶¶ 1, 44.)

5.     Defendants Neal Choquette ("Neal"), Wendy Choquette ("Wendy"), and Gary Choquette ("Gary") (collectively, the "Choquettes") are residents of Mecklenburg County, North Carolina and all currently serve on the Association's Board. (*Id.* at ¶¶ 2, 8.)

6.     In addition to serving on the Board, Neal and Wendy own and operate four other businesses also named as defendants to this action:  American Land; Atlantic Grading Co. Inc. f/k/a No Sniveling Grading Co. Inc. ("AGC"); Cedar Property Management, LLC n/k/a Austerlitz Property Management, LLC ("CPM"); and Payne Rock Investments, LLC ("PRI") (collectively, the "Choquette Businesses").[1]  (*Id.* at ¶ 3.)  Gary and Wendy are employed by each of the Choquette Businesses.  (*Id.* at ¶ 5.)

## B. Prior Actions Between the Parties

7.     It is something of an understatement to say that this lawsuit is not the first legal dispute between the parties.  First, on February 20, 2018, the Parameswars filed a complaint against Neal in Superior Court, Mecklenburg County, alleging various incidents of malfeasance and misconduct by him with respect to the Parameswars and their property.  *See Parameswar v. Choquette*, Case No. 2018-CVS-3724 (hereinafter, "*Parameswar I*," ECF No. 13).  *Parameswar I* was ultimately resolved by the Parameswars and Neal entering into a Settlement and Release Agreement on December 20, 2018, which incorporates by reference a subsequent

---

[1] The Choquette Businesses exist under the laws of North Carolina with their principal places of business in Mecklenburg County, North Carolina. However, the Choquettes utilize a combination of the Choquette Businesses to transact business in Cabarrus County. (ECF No. 3, at ¶ 4, 6.)

Consent Order signed by the Honorable Lisa Bell on January 17, 2019. ("Settlement Agreement and Consent Order," ECF No. 14.)

8.  Second, on April 18, 2019, all of the named Plaintiffs in this case—along with two additional Saratoga residents, Ronald and Sharon Kerr—filed a complaint solely against the Association in Superior Court, Cabarrus County, alleging malfeasance and misconduct by the Association. *See Kerr v. Saratoga Homeowners Assoc.*, Case No. 2019-CVS-1247 (hereinafter, "*Parameswar II*," ECF No. 6, Ex. A). In *Parameswar II*, the only relief sought was the appointment of a receiver for the Association. *Parameswar II* was voluntarily dismissed without prejudice on July 29, 2021. (*See* ECF No. 53.)

9.  Third, on August 20, 2019, Neal and American Land filed a defamation action against all of the named Plaintiffs in the above-captioned action—as well as against the Kerrs—in Superior Court, Cabarrus County. *See Amer. Land Corp. v. Kerr*, Case No. 2019-CVS-2923 (hereinafter, "Defamation Action," ECF No. 27.1). A voluntary dismissal was taken as to all defendants on December 4, 2020. (ECF No. 27.2.)

## C. The Present Action

10.  On November 6, 2020, Plaintiffs—this time, the Bloxsoms, Dryes, and Parameswars—filed this lawsuit (the "Present Action"), purporting to assert claims both individually and derivatively on behalf of the Association against the Choquettes and the Choquette Businesses.[2] (ECF No. 3.) The Complaint contains claims for

---

[2] The Court notes that although the introductory paragraph of the Complaint states that claims are being asserted both individually and derivatively on behalf of the Association (ECF

breach of fiduciary duty and slander of title as well as a request that the Court enter a declaratory judgment that certain transactions conducted by Defendants are void on conflict of interest grounds. (*Id*.) In their Complaint, Plaintiffs also seek an accounting of the Association's financial affairs and request that the Court "pierce the corporate veil" as to the Choquette Businesses.[3]

11.     The Present Action is predicated on (1) alleged violations by the Board members of various provisions of the Articles of Incorporation of the Association ("Articles," ECF No. 10.2); the Bylaws of the Association ("Bylaws," ECF No. 8.3); the Declaration of Covenants, Conditions, and Restrictions for Saratoga Phase I and Saratoga Phase II ("Declaration," ECF No. 8.1); the North Carolina Planned Community Act, N.C.G.S. § 47F-1-101, et seq.; and the North Carolina Nonprofit Corporation Act, N.C.G.S. § 55A-1-01, et seq.; and (2) allegations of certain "conflict of interest transactions" by Defendants and "arbitrary, malicious, and capricious enforcement of the Declarations and Bylaws." (ECF No. 3, at ¶¶ 10–37.)

12.     Although the Complaint sets out a long list of specific examples of Defendants' failures as members of the Board to meet duties imposed upon them by the Articles, Bylaws, the Declaration, and North Carolina law, Plaintiffs generally allege that (1) the Board has failed to adhere to corporate requirements (*e.g.*, failure to keep adequate records, failure to provide adequate notice of meetings, failure to

No. 3, at p. 1), the Complaint fails to differentiate between those claims being brought individually and those being asserted derivatively.

[3] Plaintiffs also requested in their prayer for relief that the Court "appoint a receiver for the Association to operate the Association and to investigate the Choquettes' breach of fiduciary duties." (*Id*. at p. 13.) However, on April 16, 2021, Plaintiffs withdrew their request for the appointment of a receiver. (ECF No. 51.)

keep meeting minutes, and failure to obtain liability insurance); and (2) the Choquettes use the Association as a means to harass Plaintiffs and to profit themselves and the Choquette Businesses at the expense of lot owners such as Plaintiffs (*e.g.*, by levying assessments for their own benefit, accessing owners' lots without permission, and engaging in "noxious, offensive, and/or illegal trades or activities on the lots of the lot owners in Saratoga"). (*Id.* at ¶¶ 13–37.)

13. On December 20, 2020, this matter was designated a mandatory complex business case and assigned to the Honorable Gregory P. McGuire. (Design. Ord., ECF No. 1; Assign. Ord., ECF No. 2.)

**D. The Pending Motions**

14. On January 8, 2021, the Association filed a motion to dismiss this action pursuant to Rule 12(b)(6) in which it asserts that the present lawsuit has been abated based on the prior pending action doctrine. (ECF No. 6.)

15. On January 25, 2021, the Choquettes and American Land also filed a motion to dismiss pursuant to Rule 12(b)(6) based, in part, upon the prior pending action doctrine. The Choquettes' Motion also makes the following additional arguments: (1) Plaintiffs have failed to state valid claims for relief against Gary and Wendy individually; and (2) due to the Settlement Agreement and Consent Order entered in *Parameswar I*, the doctrine of *res judicata* serves as a bar to some or all of Plaintiffs' claims. (ECF No. 12.)

16. On January 25, 2021, the Choquettes and American Land filed an Answer and Counterclaims (ECF No. 15.), which asserted counterclaims for slander

per se (Count I); abuse of process (Count II); intentional interference with business relations (Count III); civil conspiracy (Count IV); and breach of contract (Count V).[4] (*Id.*) These counterclaims are primarily based on the contentions of the Choquettes and American Land that Plaintiffs have (1) made defamatory statements about them; and (2) engaged in a concerted scheme to force them out of the Saratoga community and end their control over the Association. (ECF No. 15, at pp. 9–12.)

17. On February 24, 2021, Plaintiffs filed a motion to dismiss Counts II, III, and V of the counterclaims of the Choquettes and American Land. (ECF No. 39.)

18. This matter came before Judge McGuire for a hearing on April 20, 2021. On July 1, 2021, this matter was reassigned to the undersigned. (Reassign. Ord., ECF No. 52.) The Court notified the parties that the undersigned would be ruling upon the Motions presently before the Court, and the parties elected to provide the Court with a transcript of the April 20 hearing in lieu of requesting rehearing. Since that date, the undersigned has thoroughly reviewed the hearing transcript, the pleadings, the briefs of the parties, and all other applicable matters of record. This matter is now ripe for decision.

## LEGAL STANDARD

19. A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681 (1986). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true are sufficient to state a claim upon which relief may be

---

[4] The counterclaim for breach of contract was asserted only against the Parameswars.

granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). In deciding a Rule 12(b)(6) motion to dismiss, the court construes the complaint liberally and accepts all well-pleaded factual allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577 (2009); *Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274 (2005) (citation omitted).

20. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citation omitted). The Court may consider any such attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (citation omitted); *see also Window World*, 2017 NCBC LEXIS 60, at *11.

21. "It is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's

claim.' " *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166 (2002)).

## ANALYSIS

### A. The Association's Motion to Dismiss

22. The sole argument for dismissal asserted by the Association in its Motion is based on the prior pending action doctrine. Specifically, the Association argues that the pendency of *Parameswar II*—largely involving the same parties— serves to abate the present action. (ECF No. 6, at p. 1.)

23. Our Supreme Court has held that "where a prior action is pending between the same parties for the same subject matter in a court within the state having like jurisdiction, the prior action serves to abate the subsequent action." *Eways v. Governor's Island*, 326 N.C. 552, 558 (1990). "This is so because the court can dispose of the entire controversy in the prior action and in consequence the subsequent action is wholly unnecessary. By abating the second action, a multiplicity of actions is prevented." *Clark v. Craven Regional Med. Auth.*, 326 N.C. 15, 20 (1990). The test for determining the applicability of the doctrine is as follows: "Do the two actions present a substantial identity as to parties, subject matter, issues involved, and relief demanded?" *Cameron v. Cameron*, 235 N.C. 82, 85 (1952).

24. At the time the Association's Motion was filed, *Parameswar II* remained pending. In *Parameswar II*, all of the named Plaintiffs in this case—along with the Kerrs—brought an action alleging malfeasance and misconduct by the Association, seeking the appointment of a receiver for the Association. (ECF No. 6, at Ex. A.) The

Association argues that *Parameswar II* abates the present action because it involves substantially the same plaintiffs and because the relief sought against the Association—appointment of a receiver—is also one of the requested forms of relief set out in Plaintiffs' complaint in the Present Action. (ECF No. 6, at p. 3.)

25.    However, on July 29, 2021, Plaintiffs (and the Kerrs) took a voluntary dismissal without prejudice of *Parameswar II*. (ECF No. 53).[5] Accordingly, because *Parameswar II* is no longer pending, no basis currently exists for application of the prior pending action doctrine. The Association's Motion to Dismiss is therefore DENIED as MOOT.

## B. Motion to Dismiss of the Choquettes and American Land

26.    In their Motion, the Choquettes and American Land advance three arguments in support of the dismissal of this action as to them: (1) Plaintiffs have failed to sufficiently allege valid claims for relief against Gary and Wendy individually; (2) the prior pending action doctrine mandates a finding that the Present Action has abated; and (3) as a result of the Settlement Agreement and Consent Order entered in *Parameswar I*, Plaintiffs' claims are barred by the doctrine of *res judicata*. (ECF No. 12, at pp. 3–7.)

27.    The argument advanced by the Choquettes and American Land based on the prior pending action doctrine is identical to the argument of the Association on that issue. For the reasons set forth above, that ground for dismissal is now moot.

---

[5] Prior to that date, Plaintiffs voluntarily dismissed their request for appointment of a receiver in the Present Action. (ECF No. 51.)

Therefore, the Court must analyze only their two remaining arguments in support of dismissal.

### i. Individual Liability of Gary and Wendy

28. The Choquettes contend that the Complaint lacks allegations of specific misconduct by Gary or Wendy individually. In response, Plaintiffs argue that the Complaint makes "numerous allegations . . . against Wendy and Gary with regards to their misconduct as members of the Board[.]" (ECF No. 27, at p. 6; citing to ECF No. 3, at ¶¶ 3–8 and 13–16.) More specifically, Plaintiffs argue that they have

> alleged that these Defendants made themselves members of the board "such that they purport to act with absolute control and discretion over the Saratoga neighborhood." Thus, these allegations on the face of the Complaint unequivocally demonstrate that Wendy and Gary [ ] were in a position of power and control over the Association as they engaged in self-dealing, breached their duties to the Association and Plaintiffs, failed to procure proper insurance, and harassed Plaintiffs. Gary and Wendy['s] [ ] arguments that, taking the allegations of the Complaint as true, they do not have notice of the claims made against them are disingenuous and meritless here.

(*Id*. at p. 6.)

29. Under the law of this State, "a director, officer, or agent of a corporation is not, merely by virtue of his office, liable for the torts of the corporation or of other directors, officers, or agents." *Green v. Freeman*, 222 N.C. App. 652, 674 (2012) (quoting *Oberlin,* 147 N.C. App. at 57); *see also Yates Constr. Co. v. Bostic*, 2014 NCBC LEXIS 19, at *6–9 (N.C. Super. Ct. May 12, 2014). Nevertheless, "[a] director or other corporate agent can . . . be held directly liable to an injured third party for a tort personally committed by the director or one in which he participated" where the

director or corporate agent was *actively involved* in the tortious conduct; mere awareness or knowledge of the alleged wrongdoing is not enough. *See Oberlin*, 147 N.C. App. at 57; *Red Fox Future, LLC v. Holbrooks*, 2014 NCBC LEXIS 8, at \*36 (N.C. Super. Ct. Mar. 24, 2014) (granting summary judgment in favor of LLC member and finding that the member's "passive awareness of [other members'] actions hardly constitutes active participation"). Consequently, determination of the liability of a corporation for tortious conduct does not automatically also result in a determination of individual liability of its officers or shareholders. *See Red Fox*, 2014 NCBC LEXIS 8, at \*36–39.

30. In *Oberlin*, our Court of Appeals considered, *inter alia*, whether the trial court had properly dismissed individual claims against three of four board members where allegations were made against them collectively and solely in their capacities as directors. 147 N.C. App. at 57. The Court of Appeals affirmed the trial court's dismissal, reasoning that the plaintiff "failed to allege sufficiently any wrongful action" on the part of three of the board members. *Id*. The Court of Appeals stated that the plaintiff "simply allege[d] in a conclusory manner" that the board members "were kept fully apprised and informed" of the wrongdoing and that they participated in concealing it, but failed to allege their active participation. *Id*. Thus, the Court of Appeals upheld the dismissal of the claims against the director defendants because the complaint "[did] not clarify how and to what extent [those] defendants actively and personally participated in the alleged wrongdoing." *Id*.

31.     Here, although the Court acknowledges that the Complaint rarely differentiates between the Choquette Defendants, Plaintiffs' allegations, taken in the light most favorable to them, allege that: (1) *all three* Choquettes—who make up the entire Board of the Association—committed various wrongful acts as members of the Board that constituted a clear conflict of interest intended to benefit themselves or private businesses that they either owned or in which they otherwise had a financial interest at the expense of the best interests of the Association (*see, e.g.*, ECF No. 3, at ¶ 17); and (2) *all three* Choquettes engaged in retaliatory actions against the Plaintiffs (*Id.* at ¶¶ 29–37).  Therefore, unlike in *Oberlin*, where the Court of Appeals stressed the fact that the defendant board members only had passive knowledge of the wrongdoing and participated in its concealment, the Complaint here alleges that the Choquettes—Neal, Gary, and Wendy—*all* actively participated in the various alleged wrongdoings.  While the level of detail in support of these allegations is minimal, the Court finds them adequate to put the Choquettes on notice of the claims against them and sufficient to survive a motion to dismiss.  Accordingly, the Choquettes' motion to dismiss all claims against Gary and Wendy is DENIED.

### ii.   *Res Judicata*

32.     The Choquettes contend that in the Settlement Agreement and Consent Order entered in *Parameswar I*, the Parameswars "forever released Neal [ ] and American Land from any and all claims that existed or could exist."  (ECF No. 12, at p. 5.)  The Choquettes and American Land argue that the doctrine of *res judicata*

therefore applies such that "Plaintiffs' claims as to these Defendants, specifically Neal [ ] and American Land, should be dismissed."  (*Id*. at p. 6.)[6]

33.    In response, Plaintiffs argue that: (1) because Neal and the Parameswars were the only parties to the Settlement Agreement and Consent Order, the *res judicata* argument could not possibly apply as to the Dryes and the Bloxsoms; (2) the Settlement Agreement and Consent Order only released Neal and the Parameswars for liability for *past* acts, whereas the Complaint in the Present Action alleges acts occurring *after* the Settlement Agreement and Consent Order were entered; and (3) the Parameswars' obligation to release their claims against Neal no longer existed based on Neal's prior repudiation of the Settlement Agreement and Consent Order.  (ECF No. 27, at pp. 11–14.)

34.    Our Supreme Court has held that "[u]nder the doctrine of *res judicata* or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 15 (2004).  "For *res judicata* to apply, a party must show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both the party asserting *res judicata* and the party against whom *res judicata* is asserted were either parties or stand in privity with parties." *Williams v. Peabody*, 217 N.C. App. 1, 5 (2011) (quoting *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413–14 (1996)).

---

[6] Although none of the Plaintiffs in the Present Action other than the Parameswars were parties in *Parameswar I*, the Choquettes nevertheless appear to be contending that their *res judicata* argument applies equally to *all* Plaintiffs.

35.     Initially, the Court notes that even assuming the Settlement Agreement and Consent Order could potentially have *res judicata* effect, only the claims asserted by the Parameswars in the present action would be implicated given that none of the other Plaintiffs here were parties in *Parameswar I.* Moreover, the language in the Settlement Agreement and Consent Order only relieves the Parameswars and Neal "from any and all liability of any nature whatsoever, whether known or unknown, premised on or arising out of any acts or omissions . . . which actions or omissions occurred *on or before* [December 20, 2018]." (ECF No. 14, at p. 2 (emphasis added).) Based on the Court's reading of the Complaint in the Present Action—which is admittedly not a model of specificity—it cannot be said at this early stage of the litigation that all of the alleged acts of Neal forming the basis for Plaintiffs' claims occurred before December 20, 2018.

36.     In addition, the parties disagree as to whether the obligations of the Parameswars were terminated due to Neal's alleged repudiation of the Settlement Agreement. The Court is unable to resolve this issue at the Rule 12(b)(6) stage given that it involves a disputed question of fact. Therefore, the Choquettes' motion to dismiss this action as to Neal and American Land based on the doctrine of *res judicata* is DENIED.

## C. Plaintiffs' Motion to Dismiss Counterclaims

37.     Plaintiffs seek dismissal of the counterclaims asserted by the Choquettes and American Land (hereinafter, "Counterclaimants") for abuse of

process (Count II), intentional interference with business relations (Count III), and breach of contract (Count V).

### i. Abuse of Process

38. "[T]he gravamen of a cause of action for abuse of process is the improper use of the process after it has been issued." *Petrou v. Hale*, 43 N.C. App. 655, 659 (1979). In order to survive a motion to dismiss pursuant to Rule 12(b)(6), an abuse of process claim must allege the following two elements:

> (1) that the defendant had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used, and
> (2) that the defendant committed some act that is a malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ.

*Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 602 (2007) (internal quotation marks and citation omitted). Accordingly, "[a]buse of process requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding, and that both requirements relate to the defendant's purpose to achieve through the use of the process some end foreign to those it was designed to effect." *Chidnese v. Chidnese*, 210 N.C. App. 299, 310 (2011).

39. Counterclaimants essentially allege that Plaintiffs, with an "ulterior purpose or motive," committed the following acts: filed various lawsuits against Defendants; filed reports with federal and state agencies complaining about Defendants; interfered with real estate owned by the Choquettes and/or American Land; and issued subpoenas to companies owned or operated by the Choquettes

and/or American Land. (ECF No. 15, at ¶ 8.) Counterclaimants assert that these acts were "not proper" and constituted an "abuse of the legal process." (*Id*. at ¶ 9.)

40. Plaintiffs contend that the abuse of process counterclaim is defective because it does not adequately allege the second element of the tort. Specifically, Plaintiffs argue that Counterclaimants have "failed to allege what non-judicial act took place *after* the subpoenas were sent or lawsuits were filed to accomplish the ulterior motives alleged." In response, Counterclaimants contend that "by purposefully filing multiple legal proceedings as a vehicle to attempt to gain an advantage on these Defendants"—primarily in an effort to force them out of the Saratoga neighborhood—"the Plaintiffs have committed a willful act that will support an abuse of process claim."

41. The Court agrees with Plaintiffs that although the abuse of process counterclaim does allege an ulterior motive for Plaintiffs' initiation of various prior legal proceedings, there are no allegations in the counterclaim that Plaintiffs committed a subsequent act inconsistent with the process they had issued. It is well established that "the mere filing of a civil action with an ulterior motive is not sufficient to sustain a claim for abuse of process." *Chidnese*, 210 N.C. App. at 312 (2011).

42. Accordingly, the Court concludes that Counterclaimants have failed to state a valid claim for abuse of process. Therefore, Plaintiffs' motion to dismiss the abuse of process counterclaim is GRANTED.

### ii.    Intentional Interference with Business Relations

43.    Plaintiffs likewise seek dismissal of the counterclaim denominated as a claim for intentional interference with business relations.  This Court has held that "[a] claim for tortious interference with 'business relations' embraces claims for interference with both existing contracts and prospective future contracts." *E-Ntech Indep. Testing Services v. Air Masters, Inc.*, 2017 NCBC LEXIS 2, at *30 (N.C. Super. Ct. Jan. 5, 2017).  In their briefs, the Choquettes and American Land make clear that their counterclaim is one for tortious interference with prospective economic advantage.

44.    "An action for tortious interference with prospective economic advantage is based on conduct by the defendant[ ] which prevents the plaintiff[ ] from entering into a contract with a third party." *Walker v. Sloan*, 137 N.C. App. 387, 392–93 (2000) (citing *Owens v. Pepsi Cola Bottling Co.*, 330 N.C. 666, 680 (1992)).  In order to state a claim for tortious interference with prospective economic advantage, "the plaintiff[ ] must allege facts to show that the defendant[ ] acted without justification in inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." *Radcliffe v. Avenel Homeowners Ass'n*, 248 N.C. App. 541, 567 (2016).

45.    Counterclaimants allege that "Plaintiffs have committed intentional acts in a joint effort to prevent [Counterclaimants] from selling their remaining lots/properties in the Saratoga community."  (ECF No. 15, at ¶¶ 11–12.)  However, there is no allegation that Plaintiffs actually induced a third party not to enter into a

contract with the Counterclaimants. "The inducement required to establish a claim for intentional interference with prospective economic advantage requires purposeful conduct intended to influence a third party not to enter into a contract with the claimant." *Simply the Best Movers, LLC v. Marrins' Moving Sys., Ltd.*, 2016 NCBC LEXIS 28, at **6 (N.C. Super. Ct. Apr. 6, 2016) (quoting *KRG New Hill Place, LLC v. Springs Investors, LLC*, 2015 NCBC LEXIS 20, at **14–15 (N.C. Super. Ct. Feb. 27, 2015)).

46. Here, there is no allegation that Plaintiffs took any purposeful action that was intended to specifically influence third parties (*i.e.*, potential buyers of lots in Saratoga) not to purchase lots from Counterclaimants. Instead, Counterclaimants have alleged only that the numerous disputes and legal actions between the parties to this lawsuit have caused third parties to shy away from buying property in Saratoga. Counterclaimants have made no allegations of purposeful conduct by Plaintiffs intentionally directed at actual potential buyers.

47. Accordingly, Plaintiffs' motion seeking dismissal of Counterclaimants' intentional interference with business relations counterclaim is GRANTED. *See Regency Ctrs. Acquisition, LLC v. Crescent Acquisitions, LLC*, 2018 NCBC LEXIS 7, at *23–24 (N.C. Super. Ct. Jan. 24, 2018) (dismissing tortious interference claim where plaintiff did not allege defendant made any representations directly to third party intended to influence the third party not to enter into a commercial lease with plaintiff); *KRG*, 2015 NCBC LEXIS 20, at **16–17 (dismissing tortious interference counterclaim where defendants did not allege that plaintiffs took any purposeful

action intended to influence a third party not to enter into a commercial development agreement with defendants).

### iii.    Breach of Contract

48.    Finally, Plaintiffs contend that the counterclaim for breach of contract should be dismissed. In this counterclaim, Counterclaimants allege that the Parameswars breached the Settlement Agreement and Consent Order entered in *Parameswar I* by causing both a housing discrimination complaint and the Present Action to be filed. (ECF No. 15, at ¶ 21.)  Plaintiffs contend that this claim is invalid because Neal previously repudiated the Settlement Agreement and Consent Order by filing the Defamation Action, thereby terminating any obligations the Parameswars had thereunder.  In response, Counterclaimants argue that the filing of the Defamation Action did not constitute a repudiation because none of the claims in that action arose before the Settlement Agreement and Consent Order were entered.

49.    The Court previously addressed this repudiation argument with regard to the portion of the Choquettes' Motion seeking dismissal of the claims in the Complaint against Neal and American Land under the doctrine of *res judicata*.  As discussed above, the Court is unable to resolve the parties' differing contentions on this issue at the Rule 12(b)(6) stage.  Accordingly, Plaintiffs' motion to dismiss the breach of contract counterclaim is DENIED.

## CONCLUSION

THEREFORE, IT IS ORDERED that the parties' pending Motions are GRANTED in part and DENIED in part, as follows:

1. The Association's Motion to Dismiss is **DENIED** as **MOOT**.

2. The Choquettes' and American Land's Motion to Dismiss is **DENIED**.

3. Plaintiffs' Motion to Dismiss Counterclaimants' abuse of process counterclaim is **GRANTED**.

4. Plaintiffs' Motion to Dismiss Counterclaimants' intentional interference with business relations counterclaim is **GRANTED**.

5. Plaintiffs' Motion to Dismiss Counterclaimants' breach of contract counterclaim is **DENIED.**

**SO ORDERED**, this the 15th of September, 2021.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases